MARSH OIL COMPANY, Respondent, v. AETNA INSURANCE COMPANY, Appellant.

Kansas City Court of Appeals, February 20, 1899.

1. **Insurance**: DESCRIPTION OF PROPERTY: OIL CAKE V. GRAIN AND SEED: INTENTION OF PARTIES. Property insured was described as grain and seed but was in fact flax seed which was afterwards converted into oil cake and subsequently lost by fire. Held, the policy covered the loss, and especially so since the insurer knew that the oil cake was the only subject intended to be included in the description.

2. ———: AGENCY. The fact that an insurance agency had authority from the insured to place any excess of insurance his companies could not take with other companies does not convert him into a dual agent in regard to insurance placed with his own company.

*Appeal from the Jackson Circuit Court.*—HON. E. P. GATES, Judge.

AFFIRMED.

FYKE, YATES & FYKE for appellant.

(1)   The policy having been made to cover "grain and seeds," and having been amended to cover "the same property" in another location, action can not be maintained for the loss of a different commodity, that is oil cake, without a reformation of the contract sued on.   This is the logic of a very old case by our supreme court which has never been overruled. Wise v. Ins. Co., 23 Mo. 80.   (2)   Even if this were not true upon the facts shown the knowledge of agent Alcutt could not bind or estop the defendant company in such a way as to make the policy cover a commodity not therein mentioned, for the reason that he was acting in a dual capacity, that is, endeavoring to act as the agent both of the insured and insurer.   Huggins v. Ins. Co., 41 Mo. App. 530; Ins. Co. v. Hope, 8 Mo. App. 408; DeSteiger v. Hollington, 17 Mo. App. 388.   (3)   A policy covering grain and seeds can no more be said to insure oil cake than can a policy covering wheat be said to insure flour or bran; or a policy covering rye, to insure whiskey; or one covering corn, to insure hoecake.

HARWOOD & MEREDITH for respondent.

(1)   The petition in this action was drawn upon the theory that the words grain and seeds are sufficiently broad in their meaning to include oil cake which is simply flax seed with the oil pressed out and the only use for which is as a food for live stock.   Hewitt v. Ins. Co., 55 Iowa, 323; Hall v. Ins. Co., 90 Mich. 403, 411; Norris v. Ins. Co., 65 Mo. App. 632; Ins. Co. v. Engle, 52 Md. 468; Bassell v. Ins. Co., 2 Hughes (U. S. C. C.), 531; Bank v. Bank, 21 Wall. U. S. 294; Moody v. Surridge, 2 Esp. 333; Mason v. Skurray, reported in 1 Marshall Ins., 226, and referred to in the note to Scott v. Bourdillion, 2 Bos. &. Pul. 213; Spratley v. Ins. Co., 1 Dil-

lon, 392. (2) Respondent was entitled to recover upon the theory that, if there was any room for doubt as to that proposition, then, as the insured had used words of such wide import to designate the property covered, the assured should be permitted to show that either originally or by certain changes in the policy the intention of both parties to the contract was to cover the oil cake. And respondent should not be put to the useless trouble of reforming the policy, but ambiguous terms should be construed in favor of assured. See authorities cited above. Pettit v. Ins. Co., 41 Minn. 299; Mooney v. Howard, 138 Mass. 375; Butterworth v. Assur. Co., 132 Mass. 489; Thompson v. Ins. Co., 136 U. S. 287. (3) Alcutt was the agent of the Aetna Insurance Company and not the agent of the Marsh Oil Company. Rosencrans v. Ins. Co., 66 Mo. App. 352.

SMITH, P. J.—The plaintiff was the owner of twenty-eight thousand bushels of flax seed located in a certain building in Kansas City, which the defendant insured under the description of "their stock of grain and seed." Some months after this the seed was removed to a mill where it was ground into meal and the oil extracted therefrom. The residuum was then pressed into what is commercially known as "oil cake." From there it was removed to another building where it was stored. After this, on the application of the plaintiff, the policy was amended so as to read in this way: "This policy is hereby amended to cover same property now contained in a certain building (being the building in which the oil cake was stored). Insurance in former location ceasing from date." There is therefore no difference between the original policy and that amended except the recital as to the situs of the risk.

Shortly after this amendment was made the oil cake so stored was consumed by fire. The defendant declined to pay the loss on the ground that the plaintiff's oil cake was not covered by the terms of the policy. It is contended with

much force and plausibility, on the part of the defendant that oil cake does not fall within the definition of grain or seed.

The oil cake, as has been already stated, was what remained of the flax seed after the oil was extracted from it.

INSURANCE: description of property: oil cake v. grain and seed: intention of parties.

It contained, though, in different proportions, identically the same elements that were contained in the seed before the same reached the mill. There was nothing in the oil cake that was not in the seed. It had simply undergone a change in form. It was the product of the seed. It has been held that flax seed is grain because oil cake is made therefrom which is used as food for domestic animals. Hewitt v. Ins. Co., 55 Iowa, 323. Lord Kenyon in Moody v. Surridge, 2 Esp. 333, held that malt was corn, though in a manufactured state. In Norris v. Ins. Co., 65 Mo. App. 632, it was held by us that millet hay was covered by a policy insuring grain. If malt, the product of corn, is covered by a policy which describes the risk to be on corn, or, if millet hay, an article of commerce, is covered by a policy which describes the risk to be on grain, it is quite difficult to see any reason why oil cake, the product of flax seed, may not be covered by a policy which describes the subject of the risk to be "grain and seed;" and especially so where it appears, as here, that the agent of the insurer knew at the time of writing the description of the risk in the policy, that oil cake was the only subject intended to be included in such description. From all the circumstances and facts surrounding the writing of the policy, it may be fairly inferred that the agent of the insurer intended by the terms employed by him in describing the risk to cover the plaintiff's oil cake. Both the insurer and the insured understood, when the policy was written and accepted, that the oil cake of the latter was the subject of the risk so taken. Most certainly it was the joint understanding that the terms

Oil Co. v. Ins. Co.

employed in describing the risk were sufficiently comprehensive in their signification to include the plaintiff's oil cake.

As an abstract question, without reference to the intent of the parties, it is difficult to say, in all cases, that oil cake is not grain or seed, or may not be included in such terms. But however this may be, we think the intent of the plaintiff undoubtedly was to insure the oil cake which it had stored in the building described in the policy and the defendant must, we think, have so understood and executed the policy with the intent of insuring the same. We conclude that the terms employed in the descriptive clause of the policy are sufficient to cover the property destroyed and that therefore the defendant should be held liable.

But defendant contends further that its agent who wrote the policy in question was also the agent of the plaintiff in the transaction, and that therefore such

——: agency.
agent, while acting in such double capacity, could not bind it by his acts. It does not appear from the evidence that the defendant's agent acted in any way for plaintiff in writing the policy here in issue. It is true that whenever the defendant's agent was unable to place with the companies which he represented the full amount of insurance desired by plaintiff, he was authorized to act as the broker for plaintiff in procuring such excess insurance. But, while this is so, it is not perceived that in the matter of issuing to plaintiff a policy in one of the companies for which he was agent he acted in any dual capacity, or that he was required to take any action in doing so different from that of the agent of any other company with whom plaintiff directly placed his insurance. Nothing is seen in the relation of the defendant's agent to plaintiff incapacitating him to bind the defendant in respect to any matter within the scope of the agency.

We think the judgment for the right party and should be affirmed.